**GERAGOS & GERAGOS**
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 625-1600
GERAGOS@GERAGOS.COM

MARK J. GERAGOS SBN 108325
Attorneys for Defendant RONALD S. CALDERON

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RONALD S. CALDERON and THOMAS M. CALDERON, <br><br> Defendants. | CASE NO. 14-103-CAS <br><br> **DEFENDANT RONALD S. CALDERON'S NOTICE OF MOTION AND MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT; OR, IN THE ALTERNATIVE, FOR A PRE-TRIAL EVIDENTIARY HEARING RE:GOVERNMENT MISCONDUCT; DECLARATION OF MARK J. GERAGOS** <br><br> Hearing Date: July 13, 2015 <br> Time: 1:30pm <br> Place: Courtroom 5 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2015, at 1:30 p.m. or as soon thereafter as counsel may be heard by the above-captioned court, located at 312 North Spring Street, Los Angeles, California, moving party Senator Ronald S. Calderon will, and hereby does, move this Court for an order dismissing the indictment because of

outrageous government conduct. In the alternative, he requests an evidentiary hearing in advance of trial as to the nature and extent of Government misconduct. More specifically, he will, as he is entitled to, seek to compel the attendance and testimony of the Aljazeera reporters connected to the article that included the leaked affidavit.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Mark J. Geragos, and such other argument and evidence as may be presented at the hearing on this Motion.

DATED: May 26, 2015                                    GERAGOS & GERAGOS, APC

                                                        By: /s/MARK J. GERAGOS
                                                            MARK J. GERAGOS
                                                            Attorneys for Defendant
                                                            RONALD S. CALDERON

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1
I. INTRODUCTION .................................................................................1
II. STATEMENT OF RELEVANT FACTS ..........................................................3
III. THIS INDICTMENT SHOULD BE DISMISSED DUE TO OUTRAGEOUS GOVERNMENT CONDUCT ............................................6
   A. Leaking a Sealed Record Is Illegal. ............................................................7
   B. Senator Calderon's Constitutional Rights Were Violated by an Illegal Leak to the Press While the Grand Jury Investigation was Pending. ......9
   C. The Court May Dismiss the Indictment Pursuant to its Supervisory Authority. .......................................................................................11
IV. CONCLUSION ..................................................................................12

# **TABLE OF AUTHORITIES**

Cases

*In Matter of Respondent X*, 1997 WL 90832 (Cal.Bar Ct., 1997)..................................9

*IN RE GRAND JURY SUBPOENAS to Mark Fainaru-Wada and Lance Williams*, 438 F. Supp.2d 1111 (N.D. Cal. 2006) ..............................................................................1

*In re: Grand Jury Investigation (Lance)*, 610 F.2d 202, 218 n. 12. (5th Cir. 1980)....10

in *U.S. v. Hall* 2011 WL 6291957 (D.Vt. 2011).............................................................8

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1185, fn. 23 (9th Cir. 2006)........................................................................................................................7, 12

*Times Mirror Co. v. U.S.,* 873 F.2d 1210, 1219 (9th Cir. 1989)....................................7

*U.S. v. Flemmi*, 233 F.Supp.2d 113, 117-18 (D.Mass. 2000) ......................................10

*U.S. v. Jannotti,* 501 F. 2d. 578, 606 (1982).................................................................7

*U.S. v. Twigg,* 599 F.2d 373, 379 (3rd Cir. 1978) .........................................................7

*United States v. Barrera–Moreno*, 951 F.2d 1089, 1092 (9th Cir.1991) .......................7

*United States v. Black*, 733 F.3d 294 (2013) .................................................................6

*United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996)......................................7

*United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993 ................................7

*United States v. Holler*, 411 F.3d 1061, 1065-66 (9th Cir. 2005) .................................7

*United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995 .......................................7

*United States v. Renzi,* 2011 WL 7628540 (D. Ariz. 2011) ..........................................1

*United States v. Wilkes,* 662 F.3d 524 (9th Cir. 2011) ............................................11, 12

Statutes

18 U.S.C. § 1341..............................................................................................................4

18 U.S.C. § 1343..............................................................................................................4

18 U.S.C. § 1346..............................................................................................................4

18 U.S.C. § 1956..............................................................................................................4

18 U.S.C. § 666................................................................................................................4

18 U.S.C.A. § 1509..........................................................................................................8

18 U.S.C.A. § 1513 ......................................................................................................... 8

26 U.S.C. § 7206 ............................................................................................................ 4

- iii -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

It is with relative infrequency that the courts of the United States must address the issue of government malfeasance as it relates to leaks. Consequently, it is an ever-evolving area of jurisprudence. This is so because the government and its agents generally recognize the unlawful nature wrongful dissemination of sealed court records. A recent example exemplifies this:

> Finally, Renzi asserts his political career was influenced by the Department of Justice's actions in this case through media leaks and the timing of searches conducted of Renzi's family business. *The Government, in oral argument, conceded that leaks in fact occurred [footnote omitted], that some of them, particularly the leak regarding the wiretap and the sealed indictment, were, if leaked by law enforcement, not only government misconduct, but contemptuous, and potentially criminally punishable.*

*United States v. Renzi,* 2011 WL 7628540 (D. Ariz. 2011) (emphasis added).

Although the defense believes the conduct described below warrants dismissal of the indictment; as an alternative remedy we ask the Court to conduct an evidentiary hearing, during which the defense will establish conclusively that the government can have been the only source of the leak of a 124-page sealed affidavit to Aljazeera, and that said leak has irreparably prejudiced Senator Calderon.[1] More precisely, the leaked affidavit was not a plain vanilla affidavit, it was essentially a government manifesto against not only the Senator, but his two brothers as well. To demonstrate, the affidavit alleges, *inter alia*, the following:

---

[1] Under circumstances such as these, the Senator can compel the reporters' testimony. *See, e.g. IN RE GRAND JURY SUBPOENAS to Mark Fainaru-Wada and Lance Williams*, 438 F. Supp.2d 1111 (N.D. Cal. 2006).

- 1 -

> In addition, the prosecutor and I submitted an application for an order authorizing the initial interception of wire and electronic communications over RONALD CALDERON's cellular telephone, which United States District Judge Audrey B. Collins signed on March 8, 2013. On April 9, 2013, United States District Judge Collins signed an order renewing the interception of wire communications over RONALD CALDERON's cellular telephone for a second 30 day time period.

Exhibit A, Affidavit published by Aljazeera "leaked affidavit" at p. 9.

So, as alleged by the defense in *Renzi,* the government leaked information concerning wiretap orders, an allegation the government recognizes may be criminally punishable.

The leaked affidavit further provides:

> I began an investigation of RONALD CALDERON, THOMAS CALDERON, and Charles Calderon (RONALD CALDERON's oldest brother who formerly served as the Majority Leader in the Assembly), on or about October 15, 2007, after receiving information from the Fair Political Practices Commission and other sources. The investigation had to do, in part, with a $1 million check THOMAS CALDERON received from DROBOT, the Chief Executive Officer of Pacific Hospital of Long Beach, who retained THOMAS CALDERON as a consultant to negotiate with the State Compensation Insurance Fund, after THOMAS CALDERON left the California Assembly.

Exhibit A at p. 9.

Accordingly, not only does the leaked affidavit establish that this particular agent has been investigating the Calderons for nearly six years, the affidavit implies that the three Calderon brothers are engaged in unlawful conduct yielding incredible sums of money in exchange for political favors.

The leaked affidavit also attributes highly prejudicial statements to Senator Calderon such as:

> RONALD CALDERON responded, "Right. Well, considering, considering that the, the committee and the chair, they don't give a shit. What the machinations are. They don't care. It's all about creating jobs,

- 2 -

keeping the movie industry here in California, right? Um. Let me do this. To answer your question, I can play - I can play poker and hold out, so . . . And I'm the author of the bill. I'm not going to move the bill forward unless I get a deficit. Period. Right? And be willing for it to fall apart, which it won't. But let me read the language and sit down with my staff. And I can do this, you know, Monday, Tuesday when I get back, and see what we can do to tweak the language so that I can make that, I can make that play and I know that it can happen . . . "

Exhibit A at p. 22.

The above passages represent just the tip of the iceberg of the incredible detail revealed in the leaked affidavit. Indeed, it is worth noting that the affidavit is more than four times as lengthy as the Indictment in this matter. Put another way, the leaked affidavit not only contains prejudicial statements attributed to Senator Calderon, it purports to set forth the painstaking measures purportedly undertaken by the government to accumulate evidence against the entire Calderon family, including college-aged children. As we will demonstrate below, the government's intentional leaking of the affidavit, *during the grand jury proceedings*, was highly prejudicial and cannot be remedied in any fashion short of dismissal of the Indictment. Moreover, should this matter proceed to trial before the petit jury, it is unquestionable that the leaked affidavit will be republished by virtually every media outlet, thereby creating further, irreparable prejudice.

## II.

## STATEMENT OF RELEVANT FACTS

The Indictment in this matter, filed on February 20, 2014, charges Senator Ronald Calderon with the following offenses: 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1346: Honest Services Fraud; 18 U.S.C. § 666: Bribery Concerning Programs Receiving Federal Funds; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Money Laundering; 26 U.S.C. § 7206(2): Aiding in the Filing of False Tax Return.

As a backdrop, prior to the filing of the Indictment in this matter, Senator

Calderon was approached on at least three separate occasions by agents of the Federal Bureau of Investigation ("FBI") demanding that Senator Calderon participate in a sting operation against Senate President pro Tem Darrel Steinberg. The FBI agents requested that Senator Calderon wear a wire and secretly record his conversations with Senator Steinberg and another Senator. The FBI was specifically interested in Senator Steinberg's financial activities with Michael Drobot, the former Chief Executive Officer of Pacific Hospital of Long Beach. Following personal deliberation and several unsettling interviews with the handling FBI agents and prosecuting AUSA, Senator Calderon refused to participate in the FBI's sting operation.

Prior to obtaining the Indictment in this matter, the Government sought and obtained two separate search warrants to execute on Senator Calderon's legislative office in Sacramento. On May 2, 2013, the FBI obtained a warrant from Magistrate Judge Kendall J. Newman of the United States District Court for the Eastern District of California. The affidavit for the May 2, 2013 search warrant was ordered sealed. The Government did not execute a search under this warrant because at that time the government believed Senator Calderon would cooperate.

Between the May 2, 2013 and June 4, 2013, it appears that the Government became skeptical of the Senator's willingness to cooperate in their sting operation. Accordingly, the Government obtained a second search warrant signed by United States Magistrate Judge Dale A. Drozd. (That warrant is the subject of a concurrently filed motion to suppress due to the Magistrate's relationship with Senator Calderon's attorney in his capacity as a lawmaker, Counsel for the California Legislature, Diane Boyer-Vine.) The affidavit for the June 4, 2013 search warrant was ordered sealed.

That same day, on June 4, 2013—after Senator Calderon expressed reluctance to further assist the FBI—the search warrant of Senator Calderon's office was executed. The media was alerted to the raid as it was taking place by sources at the FBI working for the United States Attorney-Central District of California. Consequently, the FBI raid of Senator Calderon's office became a media spectacle

with camera crews present for the entire ordeal and broadcasting it live.

While the affidavit in support of the first search warrant remained under the sealing order issued by Magistrate Judge Newman, it was published by the news outlet *Al Jazeera America* on October 30, 2013. A copy of the Aljazeera article is attached hereto as Exhibit B. The Government is the only plausible source of the illegal leak; which, as mentioned above is likely criminally punishable. Put another way, at the time of the leak, nobody, other than the government, had access to the sealed affidavit. Moreover, Senator Calderon's defense notes that there has been a history of alleged leaks emanating from the U.S. Attorney's Office – Central District of California, including in high-profile matters such as the doping investigation of cyclist Lance Armstrong. Similarly, the U.S. Attorney's Office is keenly aware of how important secrecy is to certain phases of criminal prosecution. Declaration of Mark J. Geragos at ¶ 3.

The October 30, 2013, Al Jazeera article claims that the FBI's affidavit was provided to Al Jazeera America's Investigative Unit. The article contains descriptions and names of numerous potential witnesses, the nature of the purported allegations against Senator Calderon, the details of the investigation conducted by the FBI, purported conversations with Senator Calderon, and other scurrilous allegations. The article even brags that the affidavit was "still under seal." Aljazeera claimed that its legal counsel redacted portions of the affidavit to protect the identities *of the FBI agents* involved in the raid. The article contains a downloadable copy of the FBI affidavit.[2]

To recap: in light of the government's incredible misconduct in this matter as detailed further below, Senator Calderon respectfully requests that this Court dismiss the indictment in its entirety. Utilizing the totality of the circumstances approach

---

[2] The defense has independent evidence of the contact between the agents and Al Jazeera, which it will offer as evidence in a hearing in support of the motion herein. If requested, we will submit such evidence to the Court *in camera*.

discussed recently by the Ninth Circuit in *United States v. Black*, 733 F.3d 294 (2013), this Court should find that this is one of those rare cases where the government's conduct warrants dismissal of the case against Senator Calderon. As Judge Noonan observed in his dissenting opinion in *Black*:

> The United States has enormous resources that could be used to tempt and trap criminals. If these resources are deployed to bring an ongoing criminal enterprise to justice, the country is well served. If these resources are deployed to fire the imaginations of dreamers of easy wealth and turn them to conspiring to commit a crime, our government has been the oppressor of its people.

*Id*. at 318.

In this vein, we note that following the publication of the October 30th Aljazeera article, on October 31st, 2013, the FBI's Public Affairs Specialist in Los Angeles, Laura Eimiller, announced that the Department of Justice had launched an investigation of the "suspected unauthorized disclosure of a sealed court document." As of the date of the filing of this motion, over a year and a half after the leak, this investigation apparently remains "ongoing." So much for using enormous resources to identify the source of a government leak of sealed records.

### III.
### THIS INDICTMENT SHOULD BE DISMISSED DUE TO OUTRAGEOUS GOVERNMENT CONDUCT

The outrageous and inexcusable government conduct in this case requires dismissal of the case against Senator Calderon. As noted by the Ninth Circuit, "[o]utrageous Government conduct is not a defense, but rather a claim that Government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995). As such, the defense is available regardless of a defendant's predisposition. *U.S. v. Jannotti,* 501 F. 2d. 578, 606 (1982). *U.S. v. Twigg,* 599 F.2d 373, 379 (3rd Cir. 1978). "To meet this high standard, the 'Governmental conduct

1   must be so grossly shocking and so outrageous as to violate the universal sense of
2   justice'." *United States v. Holler*, 411 F.3d 1061, 1065-66 (9th Cir. 2005) (*quoting*
3   *United States v. Barrera–Moreno*, 951 F.2d 1089, 1092 (9th Cir.1991) (quotations
4   omitted)). The conduct of the government violates the Fifth Amendment if it was "'so
5   excessive, flagrant, scandalous, intolerable, and offensive, as to violate due process.'"
6   *United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (*quoting United States v.*
7   *Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)).

As demonstrated herein, the Government's conduct in leaking the affidavit justifies the dismissal of this Indictment by the Court.

### A. Leaking a Sealed Record Is Illegal.

The Ninth Circuit has consistently recognized that "warrant materials during the pre-indictment phase of an investigation . . . warrant the highest protection." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1185, fn. 23 (9th Cir. 2006). Public access to records, "while important, had to be tempered by the rule of secrecy because of the well-recognized policies behind that rule." *Times Mirror Co. v. U.S.,* 873 F.2d 1210, 1219 (9th Cir. 1989). These public policy considerations include preserving the presumption of innocence of an individual who is targeted, but not yet charged, by the government and avoiding taint in future grand jury proceedings or in the event charges are filed. *Ibid.*

Tampering with pre-indictment procedures, including leaking sealed documents, raises other concerns rising to the level of serious criminal violations. Specifically, 18 U.S.C.A. § 1509—Obstruction of Court Orders states:

> Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined under this title or imprisoned not more than one year, or both.

Additionally, the Unites States Code criminalizes acts of retaliation against witnesses or informants during pre-indictment procedures. 18 U.S.C.A. § 1513—Retaliating against a witness [or] an informant, provides:

> (e) Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.
>
> (f) Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.
>
> (g) A prosecution under this section may be brought in the district in which the official proceeding (whether pending, about to be instituted, or completed) was intended to be affected, or in which the conduct constituting the alleged offense occurred.

Here, the conduct of leaking sealed records to retaliate against Senator Calderon for his activity as a witness and informant against Senator Steinberg invokes both 18 U.S.C.A. § 1509—Obstruction of Court Orders and U.S.C.A. § 1513—Retaliating against a witness [or] an informant.

Individuals responsible for leaking confidential pre-indictment documents and information have received severe punishments by Courts. For example, in *U.S. v. Hall* 2011 WL 6291957 (D.Vt. 2011) a paralegal working for the U.S. Attorney's Office was caught leaking sealed documents to her boyfriend who was under investigation. The defendant in that case was charged with obstruction of justice. The defendant accepted a plea deal for three years of probation. At the sentencing of the defendant, the federal court explained, "This is an extremely serious offense . . . I've never seen anything like it before in my 16 years on the bench. . .You understand that

what you did goes to the heart of what the criminal justice systems is about?[3]"

Leaks of confidential pre-indictment material also violate the Department of Justice's own rules. The United States Attorney's Manual ("USAM") expressly recognizes the need for confidentiality and prohibits prosecutors from making public comments regarding the nature and progress of ongoing investigations; any statements made by a target or the failure of a target or subject to make a statement; and the identities of prospective targets, subjects, or witnesses. See USAM §§ 1-7.111, 1-7.500, 1-7.530. The USAM also makes clear that "[a]t no time shall any component or personnel of the Department of Justice furnish any statement or information that he or she knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding." USAM § 1-7.500.

Leaking sealed pre-indictment records and affidavits also violates Federal Rules of Criminal Procedure 49.1 and Local Rule 141. Both of these rules protect sealed documents from public disclosure. At a minimum, violating the Court's sealing orders subjects the violating party to contempt proceedings and sanctions. *See In Matter of Respondent X*, 1997 WL 90832 (Cal.Bar Ct., 1997) (acknowledging that attorney may be found in criminal contempt for violating a court's sealing order and imposing discipline on the violating attorney).

The violations committed by the Government here are thus criminal, contemptible, procedural, and a violation of the Department of Justice's own rules.

**B. Senator Calderon's Constitutional Rights Were Violated by an Illegal Leak to the Press While the Grand Jury Investigation was Pending.**

The Government leaked the sealed FBI affidavit to the media in an attempt to stir public support for a smear campaign against Senator Calderon and to taint the ongoing Grand Jury process.

---

[3] Ex-paralegal sentenced for Burlington grand jury leak (May 15, 2012) http://www.burlingtonfreepress.com/article/20120515/NEWS02/120514026/

Here, the Magistrate sealed the FBI affidavit which was only possessed by the FBI and the Government. Other than purportedly requesting an investigation into the leak, the government has not, and cannot provide any proper explanation as to why the affidavit was furnished to Aljazeera.

The fact that the affidavit was leaked, when only the government had access and motive to do so, inherently implicates the Government as the source of the leak and shifts the burden to the Government to answer for its conduct. Moreover, after more than a year and a half later, the "investigation" into the leak has yielded no findings.

In any event, we note that the Fifth Circuit has provided an instructive analysis concerning leaks. That Circuit found an inference that the government was the source of a leak when some variation of the following information is published:

> (i) the name of "a specific witness…to be called," and "a specific question which the witness will be asked;" (ii) "specific types of criminal conduct which the grand jury was focusing upon;" (iii) "the contents of documents presented to the grand jury;" (iv) "information learned by the grand jury;" and (v) particular entities "whose activities were being investigated.

*In re: Grand Jury Investigation (Lance)*, 610 F.2d 202, 218 n. 12. (5th Cir. 1980). *See also U.S. v. Flemmi*, 233 F.Supp.2d 113, 117-18 (D.Mass. 2000) [ordering the government to submit affidavits proving it was not the source of the leak where a single news article, citing "sources familiar with the investigation" was "susceptible to the interpretation that it reports on evidence that is not part of the public record, but which was presented to the grand jury or was provided to investigators acting as the Grand Jury's agents."]

Here, the information released in the Al Jazeera article is precisely the type of information only the government had access to. The chronology of the Government's conduct, including seeking and obtaining a search warrant in May of 2013 but not executing the warrant; obtaining a second warrant a month later after Senator

Calderon no longer had a will to assist the FBI in its investigation, then maliciously executing the warrant after inviting the media to chronicle the search solely for the purpose of ridiculing the Senator; then finally, leaking a document that was sealed under a District Court Order which "coincidentally" contained all of the allegations Senator Calderon was subsequently Indicted for by a Grand Jury. Accordingly, this Court should dismiss the indictment against Senator Calderon as a result of the Government's unlawful conduct.

**C. The Court May Dismiss the Indictment Pursuant to its Supervisory Authority.**

As discussed by the Ninth Circuit in *United States v. Wilkes,* 662 F.3d 524 (9th Cir. 2011):

> Wilkes maintains that the prosecution's pretrial unlawful disclosure of grand jury information compromised the grand jury's independence and constituted structural error. To obtain reversal based on prosecutorial misconduct, a defendant must establish "both misconduct and prejudice." *United States v. Wright*, 625 F.3d 583, 609–10 (9th Cir.2010). "A finding of prejudice ... requires that the conduct have some impact on the outcome of the proceeding—i.e., a reasonable probability that the result of the proceeding would have been different or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hein v. Sullivan*, 601 F.3d 897, 905 n. 4 (9th Cir.2010).
> 
> The district court found that before the February 13, 2007 indictment was issued, at least three newspaper articles were published identifying Wilkes as a target of the grand jury probe and predicting that he would be indicted. The trial judge concluded that "the public interest was at least temporarily compromised in this case by the irresponsible and illegal actions of one or more government agents who leaked secret grand jury information to news reporters[.]"

*United States v. Wilkes, supra,* 662 F.3d at p. 537.

Although *Wilkes* dealt with a post-conviction appeal, the analysis is similar. Here, the Government engaged in misconducted by leaking the affidavit. As

- 11 -

described above, the affidavit contains page after page of prejudicial claims, contentions, and assertions; all made and published for members of the grand jury to read and be influenced by. Moreover, as discussed above, "warrant materials during the pre-indictment phase of an investigation . . . warrant the highest protection." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1185, fn. 23 (9th Cir. 2006). The importance of protecting the secrecy of pre-indictment affairs cannot be overstated. Similarly, as mentioned above, the defense is prepared to make an *in camera* showing as to additional facts and circumstances attendant to the leak of the affidavit; which facts and circumstances will also highlight the prejudice to Senator Calderon, including the likelihood that the result of the grand jury proceedings would have been different but for the Government's wrongful, indeed, illegal conduct in this matter.

Put another way, this Court should rebuke the Government and its agents for having engaged in such outrageous conduct.

## IV.
## CONCLUSION

In light of the foregoing, Senator Calderon respectfully requests that the Court dismiss the Indictment or, in the alternative, grant a pre-trial evidentiary issue as to the nature and extent of government misconduct.

DATED: May 26, 2015                     GERAGOS & GERAGOS, APC


By: /s/MARK J. GERAGOS
MARK J. GERAGOS
Attorneys for Defendant
RONALD S. CALDERON

- 12 -